Our next case is number 222275, Beteiro, LLC v. DraftKings, Inc. Our next case is number 222275, Beteiro, LLC v. DraftKings, Inc. Our next case is number 222275, Beteiro, LLC v. DraftKings, Inc. Good morning. If it pleases this Court, Scott Fuller on behalf of the Plaintiff Appellant Beteiro, LLC. We're here of course on a motion to dismiss, one-on-one motion on four patents that were asserted in the district court below. We think we've clearly shown in our briefing and of course in our argument below that under both step one and step two of the eligibility analysis, we think these claims should be held patent eligible and at minimum, the motion to dismiss that was filed below should be rejected and the case should be remanded for further proceedings. I will point out something that's not in the record but which just came up yesterday. The PTAB and the four pending IPRs that were filed by the defendants as to the four asserted patents were all held to be patent eligible or patentable over the prior art. They were deemed to be not anticipated and not obvious. Now obviously we understand the distinction between 102 and 103 and we're not suggesting that the PTAB's finding is binding in any respect on this court on 101. Nevertheless, we do find it to be compelling evidence of what we have argued below and what we're arguing now. Certainly the facts that are laid out in the complaint and that is simply that the inventions that are captured in the asserted claims at the time of patenting were unconventional and the fact that they are non-obvious we think is good evidence in support of that. So moving on to the argument as to step one, we think the proper approach were it taken by the district court it never would have even reached step two. We don't believe there's an abstract idea embodied in these patents. The question at step one is not what is the abstract idea. The question at step one is to determine under TexEc and others, what is the focus of the invention? Read the specification, read the claims, identify what the focus is. What do these claims identify? What do you say the focus is? Because if I understood from your briefing it seemed awfully abstract even what you say the focus is. So tell us what the focus is. The focus of the claims has to include the unique aspects of the claims and that is there is a remote yet legally compliant way for wagers to be placed to have legal compliance to a remote wagering platform and that access includes at minimum the user communication device, the bet message, the use of the GPS location information for the purposes of fulfilling or not fulfilling the wager and of course the notification message on the front end. So that however it is formulated linguistically is a specific solution to a problem. It's not an abstract statement of a problem. I guess we could argue about that. It sounded abstract to me when you said it that the district court analogized to gambling institutions always having to know are you in the right place. Some of these casinos I guess cross state lines and half of it's legal, half of it's not legal. We've said that kind of real world analogy is a proper method of reasoning under Alice at least step one. Where does the district court err here? Numerous problems with that analogy. I'll begin with the fact that the analogy is the exact embodiment and the exact state of the art that these claims were designed to overcome. Namely in the prior art and in the face to face state line analogy or any in person casino analogy, it is the casino itself that is geolocated. The casino doesn't move. The casino is located in a specific fixed place. That's why in a face to face casino environment gamblers have to come to the casino. The casino doesn't move. What I hear you saying is yes, this is something that's long been done in the real world but we're now going to do it on a computer. Isn't that what you're saying? That's not what I'm saying. What is done in the real world has no analogy to these claims. Because the real world required a face to face meeting. Now it's face to computer. It's face to computer. It's just an abstract idea. Do it on a computer. Face to computer in which you have no idea where the computer is. Under the gambling laws we have to know that. The incorporation of a communication device which is what the casino is now engaging with into the claims was not conventional at the time. iPhones didn't even exist until 2007. And these claims over 2000 is to your priority. That seems to me to be a problem because if iPhones didn't exist until 2007 and you have to use an iPhone, how is this patent telling you how to do this? You don't have to use an iPhone. The claims are directed to a communication device. But the fact that the technology I don't think you make much in your brief about the fact that this technology that enabled this to be done didn't exist at the time the patent was filed. Right? There were certainly iPhones didn't exist. The technology to carry out a computerized interaction existed for sure. But the implication that the real world use and explosion in use didn't exist until several years later. I think that's the point of what's laid out in the complaint. And specifically the facts that are laid out in the complaint. Your specification doesn't tell you how to do this. It seems like an abstract idea of figuring out where the computer is located and taking into account state gambling laws. But it doesn't tell you how to write the software to do that. Right? It doesn't tell you how to write the software to do it. No. It's a system that incorporates geolocation as an input into the system which is then used to carry out the back end of the method and the system claims which says, okay, we're going to either carry out or not carry out based on the content of the vet message. Part of which, one aspect of which, is the geolocation information. So that's what the claims require. And as of the date of patent, 2002, as is laid out in the complaint, and again what must be taken as true, there are a laundry list of facts which identify and illustrate and lead to the inference of unconventionality. All of those facts are in the pleading and we've cited to them. It's basically paragraphs, I think it's 16 through 37 of the complaint. So those facts illustrate that the conventional approach at the time was certainly not to use GPS at the time. The complaint doesn't have to be taken as true where it contradicts the patent. Would you agree with that? Sure. Okay. So what does the patent tell us about the use of GPS at the relevant time? If I'm correct, there's just one paragraph at column 80 on GPS. Is there more than that? I'm not aware, Your Honor, of specific citations to GPS, but I'll take you at your word. Certainly GPS exists. Hold on. Are you contending that there's more discussion of GPS on the patent? No. No. No, I'm not. Okay. All right. So doesn't the fact that you have a 100-column patent that you want us to know how to say is all about the use of GPS, all it has is one paragraph, and that's being generous, really, kind of like a one-on-sentence or two. Doesn't that suggest that the author of the patent believes that when it's thrown out, they already knew all about GPS and how to use it, and therefore it's merely conventional? GPS as a concept was no, for sure. GPS for the application of the GPS, which the claims, again, use GPS as an input into a system in order to perform this legal compliant wagering, that application of GPS was certainly not conventional at the time, and again, the complaint points out the fact that those in the industry would have said other than column 80, roughly lines 19 to 33. And the complaint sets forth facts. Yes, but if there's, rather than not read your lengthy patent, which doesn't set forth any of that, as essentially contradicting what's in your complaint. I don't, all respect, I don't believe they're contradictory. The fact that GPS as a technology existed and was known, as the patent specification points out, isn't contradictory to the follow-along fact that those in the industry did not view GPS application for purposes of ensuring compliance with local laws to be a viable or the most viable option because, again, at the time, it had its own shortcomings, which are laid out in the complaint. So as a technology which existed, yes, you could geolocate. The capacity to geolocate at the time is what led those in the industry to say, not really going to do that because it's inefficient, and whereas the patent claims obviously took that divergent approach. So the argument is that the invention is the idea of using GPS to identify the location of online gamblers. That's one aspect of it. Certainly the threshold point that is made in the claims further requires the notification message at the front end, the user communication device, which, again, we suggest based on the complaint that that was not conventional at the time. So certainly the use of GPS as the means of assuring compliance before the wager was placed is an aspect of the claims without a doubt. But the claims are not GPS applied using a computer. They require far more than that, as I've elaborated. I think I'm into my rebuttal time, unless there are further questions from the panel. This one. Ms. Theodore, we generally don't look with favor on dividing arguments, particularly when you sign a single brief, but since you plan to do that, we'll allow it. Go ahead. Thank you, Your Honor.  These patents are materially indistinguishable from the patents in CG Technology v. FanDuel, where the court summarily affirmed an ineligibility finding, and the district court correctly found them to be ineligible under ALICE. At Step 1, the patents assert that the focus of the claim to advance is obtaining information about a user's location and allowing or disallowing online gambling transactions based on that location information. This is both a fundamental economic practice and a method of organizing human activity, which are two categories of abstract ideas. And authorizing an economic transaction or not, based on whether or not the party is eligible, is a fundamental, long-prevalent economic practice. This court has repeatedly held analogous claims to be abstract, which, as Your Honors noted, is a key method of determining 101 eligibility. There's the CG Technology case. The Capital One Bank case held that customizing web page content based on a user's location is also abstract. The Universal Secure Registry case held that electronic verification of user identity to authenticate them for an economic transaction is also abstract. The Wisner v. Google case held that creating a digital travel log by automatically pulling GPS information from a phone is abstract. And as the district court noted, casinos have been verifying a prospective bettor's eligibility and location for as long as they've been around, including in the messenger betting context and in the other contexts that we discussed in our brief. The patents certainly claim no specific improvement in GPS or in any other computer or technological capability. They don't intend to solve a computer problem at all. Which is another question this court asks at the Step 1 inquiry. At Step 2, similarly, the patents just claim routine conventional activity. The use of GPS is routine. GPS is used in its routine way to pull location information. And as I noted, this court has repeatedly held that analogous identical use of GPS is not an inventive concept. How do we know on this record that the use of GPS at this time is merely conventional? Because the complaint expressly alleges otherwise. Right, so I have a couple of responses on that. First of all, if you look at the patent examiner decision, which the other side has invoked and cited in their complaint, that decision specifically says that the Alcorn patent discloses the use of GPS to enable online remote gambling. Do you have a say for that? Yes, I do. I think that it is JA676. Let me just confirm that. Yes, JA676. And what the notice of allowability says is that the only things the Alcorn patent doesn't teach is things like the notification message, which don't have anything to do with the use of GPS, and which are not even plausibly conventional. I'll note that the IPR decision that my friend referenced that came out yesterday, which of course only talked about obviousness and not about eligibility, that IPR decision, or there are four of them, specifically said that prior patents did disclose the use of GPS to verify location for online gambling. The only things that the IPR decision said were not obvious were the initiation of a transmission of a communication link, which is obviously not described in any nonconventional way in these patents, and then the fact that the so-called bet message contains two pieces of information simultaneously, namely the I want to place a wager and the location information. And that's also not plausibly unconventional or inventive for a variety of reasons, including that the complaint contains no allegations that the bet message is unconventional, including because it just invokes ordinary generic off-the-shelf technology like sending a message. I'm not sure if I'm going to move off the GPS yet. The complaint alleges that the GPS and the use of it with respect to online betting is unconventional at the relevant time, correct? It does allege that. It does that. And so why not at best recent IPR, maybe even examiner statement, other things, other patents you want to point to, why doesn't that just create a fact dispute that at a motion to dismiss we can't resolve when the case goes forward? So the reason the complaint alleges that the use of geolocation wasn't conventional for two reasons. One, it says that online gambling was illegal. And two, it says that GPS wasn't sufficiently precise to do this in 2002. Those are the things it says about why use of GPS was unconventional. And the patents here don't claim to solve either of those problems, right? Nothing in the patent suggests that it's improving on GPS or making it precise. It just takes GPS as it stood in 2002 as it stands today. But I'd say sort of more generally, this is confusing the novelty and the unconventionality inquiry because the claim here that the use of GPS in this particular context wasn't being done in 2002, that's just claiming the abstract idea as the inventive concept. And so, for example, in the Symantec case, the jury had found that a method of identifier matching for email spam filtering was both novel and non-obvious at the time. And the court said it didn't matter because even if the idea of applying identifier matching to do spam filtering was novel and non-obvious, it was still conventional at Step 2 because it just relied on conventional computing function used in their ordinary way. And the question at Step 2 is not whether someone has applied the generic technology in this particular context before, but whether the way in which the technology is functioning is unconventional. And here, there's no allegation that the way in which the GPS technology is functioning is unconventional. It's doing exactly what GPS technology ordinarily does, which is providing a location. So I think the allegations in the complaint don't get to the relevant question at Step 2. But even if they did, certainly the court is not required to accept conclusory allegations as true where they're controverted by evidence that is attached to the complaint or is cited in the complaint. And here, the evidence that the other side is asking you to rely on is a patent examiner finding that specifically says that the Alcorn patent, part of the prosecution history, something this court can consider, specifically says that the Alcorn patent does disclose the use of GPS for precisely this purpose before 2002. All right, and let me turn to... I can turn back to the bet message, unless the court has any further questions about the use of the GPS. So on the bet message... Again, the patent just invokes ordinary, generic, off-the-shelf technology. What it says as inventive is the idea of sending two pieces of data at once together, but of course that's something that email messages do all the time. Email messages contain multiple pieces of data. They contain, you know, your IP address. They contain your subject matter and content. People have sent letters for hundreds or thousands of years that contain a return address, which is location information, and substantive content. And this court has repeatedly held, in cases like BiSafe and others, that simply transmitting information on a computer is abstract and conventional. And then, more generally, with respect to the bet message, but also the patent as a whole, everything in this patent is described in completely functional terms with no specificity or technical detail as to how anything's being achieved. I mean, the notion that the user communication device is somehow inventive, I mean, that's... You know, the specification says the user communication device can be an ordinary telephone. The patent allows you to have one device that has GPS and then to have another device that's an ordinary telephone and to call up and transmit GPS information on your bet. And so, you know, it's as far from a specific protocol as you could possibly imagine. It doesn't say anything about how to do it. And the same goes for the notification message, which is just generically described as transmitting information from a computer. So... Yep, okay. Unless the court has any further questions, I would cede the remaining time to my friend. Thank you. Thank you, Your Honor. Mr. Williams? Yes, I'd like my indulgence for one moment. There is one slight difference in the record, which is what I wanted to address. So in the Draft King's motion to dismiss, we do raise, in response to Judge Stark's question, three references that the examiner cited to during prosecution, all three of which use GPS to determine location of a gambler. Those are all in this record. It's the Alcorn patent, which was mentioned at Appendix 767, the Tindler publication at Appendix 786, and the Carter publication at Appendix 793. The Carter, perhaps most notable, for calling the use of GPS for this purpose conventional. That's all I had, Your Honor. Okay, thank you. Mr. Fuller? Thank you, Your Honor. Briefly, it sounds an awful lot like fact disputes, which preclude dismissal on the pleadings. I will point out that this whole conversation about the messenger betting as being some sort of indicator of conventionality at the time is a complete non-starter. Messenger betting has nothing to do with these claims. Claims don't address messenger betting. Messenger betting is a concept that existed long before and still exists today. The claims don't attempt to address this messenger betting where one person places a bet on behalf of another. Whether the wager is geolocated or not, or whether an individual walks into a casino, the messenger betting scenario is still unknown. It's a fact that messenger betting is a thing that exists, but that's not what these claims are directed to, and that's not what is identified in any respect as impacting the eligibility of these claims. Again, the question of the fundamental longstanding practice, I think I addressed that earlier. It's not a fundamental longstanding practice to remotely identify the location of a wagerer. That was not something that was contemplated in the face-to-face brick-and-mortar scenario. As for the cases that my friend discussed, we addressed all of those in our brief. I don't want to argue cases again, but certainly on the record, on a motion to dismiss, we think at minimum there are fact questions that require remand for further consideration as to what was and was not conventional as of 2002. Thank you. Thank you. Thank you. Thank all counsel. The case is submitted.